UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA ORTIZ CALDERON,<br>Plaintiff,<br>v.<br>POLLY KAISER, et al.,<br>Defendants. | Case No. 25-cv-06695-AMO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Petitioner Carolina Ortiz Calderon is an asylum seeker who was detained while exiting the courtroom after an immigration court hearing on August 7, 2025. Ortiz Calderon filed a petition for writ of habeas corpus and a motion for a temporary restraining order seeking release from detention. ECF 2, 3. On August 8, 2025, this Court issued a temporary restraining order ("TRO") requiring the Government to release Ortiz Calderon and enjoining it from re-detaining her without notice and a pre-arrest hearing before a neutral decisionmaker, and ordered the Government to show cause why a preliminary injunction should not issue. On August 15, 2025, the Government filed its response, ECF 16, and Ortiz Calderon's reply followed on August 20, 2025, ECF 20. Having carefully considered the parties' papers and the arguments made therein and at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Ortiz Calderon's motion for preliminary injunction for the following reasons.

I.  BACKGROUND

Ortiz Calderon is a 25-year-old asylum seeker from Colombia. Petition for Writ of Habeas Corpus ("Pet.") (ECF 2) ¶ 1. She arrived in the United States on June 3, 2024, and was briefly detained before federal agents released her on her own recognizance with a notice to appear for removal proceedings in immigration court. Pet. ¶ 1, 54. Ortiz Calderon was issued a Form

1    I-220A, Order of Release on Recognizance, that stated she was being placed in removal

2    proceedings and, under section 236 of the Immigration and Nationality Act (codified at 8 U.S.C.

3    § 1226), she was being released on her own recognizance provided she comply with certain

4    conditions, including reporting for any hearing or interview as directed and refraining from

5    violating any local, state, or federal laws or ordinances.  ECF 16-1.

6          Ortiz Calderon moved to San Jose, California, Pet. ¶ 55, where she works as a cleaner,

7    Declaration of Tatiana Jimena Ortiz Calderon (ECF 3-2) ¶ 7.  She timely filed an application for

8    asylum, withholding of removal, and relief under the Convention Against Torture.  Pet. ¶ 56.  She

9    has no criminal history.  Pet. ¶ 57.  Ortiz Calderon suffers from polycystic ovary syndrome and

10   had surgery around a year ago, and requires medication and ongoing medical treatment.  Pet. ¶ 65.

11   She also suffers from severe depression and anxiety, for which she has received treatment.  *Id.*

12         On August 7, 2025, Ortiz Calderon appeared at the San Francisco Immigration Court for

13   her first master calendar hearing.  Pet. ¶ 58.  She was accompanied by a friend and appeared in

14   court without legal counsel.  Pet. ¶¶ 3, 58.  At the hearing, the Government orally moved to

15   dismiss its case seeking Ortiz Calderon's removal.  Pet. ¶ 59.  Ortiz Calderon opposed, and the

16   presiding judge gave her time to respond to the motion and set a further hearing for September 4,

17   2025.  *Id.*  Minutes after Ortiz Calderon exited the courtroom, three Immigration and Customs

18   Enforcement ("ICE") agents arrested her.  Pet. ¶¶ 3, 61.  They did not present a warrant and told

19   Ortiz Calderon that her case had been dismissed by the immigration judge.  Pet. ¶¶ 3, 61.  On

20   August 8, Ortiz Calderon filed a petition for writ of habeas corpus accompanied by a TRO motion,

21   ECF 2, 3, and the Court granted the TRO motion that same day, ECF 8.  On August 22, 2025,

22   prior to the expiration of the TRO, the Court heard argument on whether a preliminary injunction

23   should issue.  ECF 22.

24   **II.    DISCUSSION**

25         To obtain a preliminary injunction, a plaintiff must establish likelihood of success on the

26   merits, irreparable harm in the absence of preliminary relief, that the balance of equities tips in the

27   plaintiff's favor, and that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council,*

28   *Inc.*, 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are serious questions going to

1  the merits – a lesser showing than likelihood of success on the merits – then a preliminary

2  injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the

3  other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217

4  (9th Cir. 2017) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir.

5  2013)) (internal quotation marks omitted). When the party opposing a preliminary injunction is

6  the government, the balance of equities and public interest factors merge. *Nken v. Holder*, 556

7  U.S. 418, 435 (2009).

**A. Likelihood of Success on the Merits**

As to the first *Winter* factor, the Court finds Ortiz Calderon is likely to succeed on her claim that the Due Process Clause entitles her to a hearing before she may be re-detained. The Due Process Clause protects all persons, including noncitizens, from deprivations of life, liberty, and property without due process of law. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Typically, the Due Process Clause requires a hearing of some sort before the government may deprive a person of liberty. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Accordingly, even when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates "an implicit promise" that the individual's liberty will be revoked only if they fail to abide by the conditions of their release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). A noncitizen released from custody pending removal proceedings therefore has a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *see also Ramirez Clavijo v. Kaiser*, 25-cv-06248-BLF, at 6 (N.D. Cal. Aug. 21, 2025) (gathering cases).

Here, after briefly detaining Ortiz Calderon in June 2024, ICE released her on her own recognizance provided she comply with certain conditions, including reporting for any hearing or

interview as directed and refraining from violating any local, state, or federal laws or ordinances. ECF 16-1.  The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would no pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).  Thus, ICE's June 2024 release of Ortiz Calderon reflects a determination by the Government that she was neither a danger to the community nor a flight risk.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).  Additionally, her release from custody was thus an "implied promise" that her liberty would not be revoked unless she violated the conditions of her release.  *Morrissey*, 408 U.S. at 482.  She has not.  Accordingly, Ortiz Calderon has a protected liberty interest in remaining out of custody, which has only become more significant in the year since then, as she has established herself in San Jose, found employment, and received critical medical treatment.  Pet. ¶¶ 55, 65.

      Attempting to circumvent this caselaw, the Government instead argues that Ortiz Calderon has no liberty interest because she is a "noncitizen subject to expedited removal" due to her presence in the United States without having been either admitted or paroled, or physically present in the United States continuously for two years.  Respondents' Opposition ("Opp.") (ECF 16) at 11, 13.  The Government contends that, consequently, any future detention of Ortiz Calderon would be mandatory under 8 U.S.C. § 1225(b)(1) or § 1225(b)(2).  But Ortiz Calderon remains in removal proceedings pursuant to 8 U.S.C. § 1229a.  Though the Government could have placed Ortiz Calderon in expedited removal proceedings when she was initially detained, it did not.  The Government's position that Ortiz Calderon was both released under § 1226(a) yet remains "subject to" § 1225(b) both defies logic and is unsupported by law.  *See Arostegui Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *9 (E.D. Cal. Aug. 14, 2025) (discrediting the same argument where "DHS could have placed [petitioner] in expedited removal proceedings when she arrived in the country, it did not," and instead put petitioner into § 1229a removal proceedings).  Moreover, the Government's invitation to conclude that Ortiz Calderon is subject to expedited removal because she would be if the immigration judge grants the pending motion to

4

dismiss the § 1229a proceedings requires a level of speculation the Court is unwilling to undertake. Therefore, the Court finds that Ortiz Calderon has a protected interest in her continued liberty.

In determining what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Government argues *Mathews* does not apply here, as neither the Supreme Court nor Ninth Circuit have explicitly used it to analyze due process claims by noncitizens held in immigration detention. Opp. at 13. However, the Ninth Circuit "assume[d] without deciding" that *Mathews* applies in the immigration detention context, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022), and has regularly applied *Mathews* in due process challenges to removal proceedings, *see Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 n.2 (N.D. Cal. July 24, 2025) (collecting cases). The Court therefore joins the many district courts in this Circuit that have applied *Mathews* in this context. *See E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *3 n.1 (W.D. Wash. Aug. 19, 2025) (collecting cases). *Mathews* calls for balancing the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. These factors support a finding that Ortiz Calderon has a constitutional right to a hearing before a neutral decisionmaker before being re-detained.

First, Ortiz Calderon has a substantial private interest in remaining out of custody, as "she has an interest in remaining in her home, continuing her employment, [and] obtaining necessary medical care." *Pinchi*, 2025 WL 2084921, at *4; *see also Arostegui Castellon v. Kaiser*, 2025 WL 2373425, at *9 (finding petitioner "has a substantial private interest in being out of custody, which would allow her to continue" working, attending community college, building connections in the community, and obtaining necessary medical care). The first *Matthews* factor therefore weighs in Ortiz Calderon's favor.

1  Second, there is a risk the Government will erroneously deprive her of her liberty interest if

2  it does not provide her with a pre-detention hearing. Where an individual has not received a bond

3  or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh v.*

4  *Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). In *Singh*, the

5  court noted that

6  > Petitioner has no criminal history and . . . has attended every check-in and court hearing . . . . Nonetheless, ICE agents arrested [him] without a warrant as he exited a courtroom following his regularly scheduled immigration hearing. Petitioner has not since been provided any procedural safeguards to determine whether his detention is justified.

10  *Id.* Such is the case here, so "the probable value of additional procedural safeguards . . . is high."

11  *Id.* (citing *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal.

12  May 16, 2025)). The second *Mathews* factor therefore weighs in Ortiz Calderon's favor.

13  Finally, any countervailing government interest here is minimal. The Government has

14  identified no legitimate interest that would support detaining Ortiz Calderon without a pre-

15  detention hearing. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (finding the

16  third factor favored petitioner, noting the government "has the power to take steps toward" re-

17  arresting petitioner, but "its interest in doing so without a hearing is low"). Neither has the

18  Government asserted that the cost of providing a hearing would impose a financial or

19  administrative burden. "In immigration court, custody hearings are routine and impose a

20  'minimal' cost." *Singh*, 2025 WL 1918679, at *8 (citing *Doe v. Becerra*, No. 2:25-cv-00647-

21  DJC-DMC, 2025 WL 691664, at *2 (E.D. Cal. Mar. 3, 2025)); *see also Pinchi*, 2025 WL

22  2084921, at *6 ("[I]t is likely that the cost to the government of detaining [petitioner] pending any

23  bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.").

24  In conclusion, the *Mathews* factors weigh in favor of Ortiz Calderon, and she has therefore

25  shown a likelihood of success on the merits of her claim that she is entitled to a hearing before a

26  neutral decisionmaker prior to any detention.[1]

---

[1] Ortiz Calderon also brings substantive due process, Fourth Amendment, and Administrative Procedure Act claims. Because these claims all challenge the lawfulness of her detention, the

### B. Irreparable Harm

The Court next considers the second *Winter* factor and finds that Ortiz Calderon would likely suffer immediate and irreparable harm absent injunctive relief. Specifically, she would face "the risk of immediate re-detention by ICE, likely in violation of her constitutional rights and with potentially devastating consequences for her economic livelihood . . . and her health." *Pinchi*, 2025 WL 2084921, at *6. This constitutes immediate and irreparable harm. "[D]eprivation of constitutional rights 'unquestionably constitutes irreparable injury,' " *Hernandez*, 872 F.3d at 994-95 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)), and "most courts hold that no further showing of irreparable injury is necessary," *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). Detention also presents a significant threat to Ortiz Calderon's health, as she suffers from medical conditions that would likely worsen in detention. "The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities . . . ." *Hernandez*, 872 F.3d at 995. These conditions could prove especially harmful to Ortiz Calderon, who must take medication and whose health conditions require regular monitoring. Pet. ¶ 65.

### C. Balance of Equities and Public Interest

Because the party opposing the motion is the Government, the final two *Winter* factors merge. *Nken*, 556 U.S. 418, 435 (2009). Here, these factors weigh heavily in favor of granting a preliminary injunction. There is a strong public interest in "upholding procedural protections against unlawful detention" as well as "in the efficient allocation of the government's fiscal resources," *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (citing *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (internal quotations omitted)), so this factor supports preliminary injunctive relief. And while the potential harm to Ortiz Calderon is significant, the "potential harm to the government is minimal." *Pinchi*, 2025 WL 2084921, at *7. At most, the Government's injury would be a short delay in detaining Ortiz

---

Court need not assess their merit at this stage. *See Pinchi*, 2025 WL 2084921, at *2 n.1; *Arostegui Castellon*, 2025 WL 2373425, at *9 n.10.

Calderon, and despite its contention that it has a "compelling interest in the steady enforcement of its immigration laws," Opp. at 16, it "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The balance of hardships therefore tips sharply in favor of Ortiz Calderon.[2] Accordingly, the final two *Winter* factors weigh in favor of a preliminary injunction.

### D. Security

Federal Rule of Civil Procedure 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). Because the Court "concludes there is no realistic likelihood of harm" to the Government from enjoining its conduct, *id.*, the Court finds no security is required here. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4; *Arostegui Castellon*, 2025 WL 2373425, at *11.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Ortiz Calderon's request for a preliminary injunction. The Government may not re-detain Ortiz Calderon during the pendency of the proceedings before this Court without providing her with a pre-detention bond hearing before a neutral immigration judge. Ortiz Calderon may not be detained unless the Government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms. The Court **DEFERS** ruling on Ortiz Calderon's request for an order enjoining the Government from transferring her out of this District, and **ORDERS** the

---

[2] As such, even if Ortiz Calderon could only establish a serious question as to her Due Process Claim, a preliminary injunction would be warranted. *See All. for the Wild Rockies*, 865 F.3d at 1217.

8

1  Government, by August 29, 2025, to file a supplemental statement no longer than two pages
2  indicating its position on whether the Court would lose jurisdiction over Ortiz Calderon's habeas
3  proceedings if the Government transferred her out of this District.  By September 5, 2025, the
4  parties **SHALL FILE** a joint statement with a proposed case management schedule.

**IT IS SO ORDERED.**

Dated: August 22, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**